179 So.2d 387 (1965)
Robert Timothy WILLIAMS, a minor joined by his father and next friend, Ferrell Williams, Appellants,
v.
James Franklin DAVIDSON, Sr., and Cliff Fields Motors, Inc., a corporation, Appellees.
No. G-140.
District Court of Appeal of Florida. First District.
October 14, 1965.
Rehearing Denied November 10, 1965.
Philip D. Beall, Pensacola, for appellants.
Beggs, Lane, Daniel, Gaines & Davis, and Harrell, Caro, Middlebrooks & Wiltshire, Pensacola, for appellees.
CARROLL, DONALD K., Judge.
The plaintiffs in an automobile negligence action have appealed from a final summary judgment entered by the Circuit Court for Escambia County in favor of the corporate defendant.
The ultimate question for determination in this appeal is whether, at the time of such entry, there was sufficient competent evidence before the court from which a jury could have lawfully found that the *388 said corporate defendant was liable in damages to the plaintiffs.
The evidence that had been adduced by the parties at the said time established the following facts that are pertinent to the consideration and determination of the above question.
At about noontime on January 12, 1964, the minor plaintiff, Robert Timothy Williams, then four years old, ran into the street in a community near Pensacola in the said county and collided with a Volkswagen automobile, which was being driven by the 17-year-old son of the individual defendant, James Franklin Davidson, Sr., the latter being hereinafter referred to as Davidson.
On Saturday, January 11, 1964, the day before the said accident, Davidson had gone to the place of business of the corporate defendant, Cliff Fields Motors, Inc., hereinafter referred to as Fields Motors, for the purpose of trading automobiles. He selected a 1958 Volkswagen, the vehicle involved in the above accident, and decided to trade in his Triumph sportscar. Under a written agreement which he made with Fields Motors, Davidson was to pay $895 for the Volkswagen; he was allowed a credit of $395 for the said Triumph, which was traded in; and he was also to pay $26.67 for sales tax and the license tag. The local banks, however, were closed at this time, which was sometime in the afternoon of that Saturday, so Davidson delivered the Triumph, paid for the said tax and tag, and stated that he would pay the $500 cash difference to Fields Motors when the banks opened on the following Monday, January 13.
The above terms of the agreement between Davidson and Fields Motors were incorporated in a written statement executed by both parties on the said Saturday, including Davidson's promise to pay the said balance of $500 on the following Monday, which payment he in fact did make on that date, though without mentioning the accident that had occurred on the intervening day, Sunday, as described above.
On February 20, 1964, the said minor plaintiff, joined by his father and next friend, Ferrell Williams, filed this negligence action against Davidson only on account of the injuries sustained by the minor plaintiff in the above-described accident on January 12, alleging in their complaint that Davidson was the owner of the automobile which struck the minor plaintiff. In his answer to the complaint Davidson admitted such ownership. However, on June 15, 1964, the plaintiffs amended their complaint by joining Fields Motors as a party defendant and by alleging that an automobile of Davidson "and/or" Fields Motors struck the minor plaintiff.
About two months later Fields Motors filed in the cause a motion for a summary judgment in its favor, predicated upon the fact that it was not the owner of the automobile involved in the case. On November 13, 1964, the Circuit Court entered the summary final judgment appealed from herein, granting the said motion and adjudicating that the plaintiffs take nothing by their action against Fields Motors. This judgment did not, of course, affect their rights in the cause against the remaining defendant, Davidson.
The summary judgment proceedings in the trial courts of this state are authorized under the provisions of Rule 1.36 of the Florida Rules of Civil Procedure, 30 F.S.A. The key provision of that rule reads as follows: "The judgment or decree sought shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law."
In a myriad of cases the Florida courts have construed and applied the just-quoted provision and the other provisions of the said Rule 1.36. Among the rules established therein is the general rule that, *389 in accordance with the above-quoted key provision, if the enumerated types of evidence presented by the parties under the issues framed by the pleadings is such that, if the said evidence had been presented to a jury, the jury could not lawfully conclude therefrom and hold that the defendant is liable to the plaintiff in the cause, and if the said evidence shows that the defendant is entitled to a judgment in its favor "as a matter of law," the trial court, after holding the hearing contemplated by the said rule on the defendant's motion for a summary judgment, may and should grant the motion and enter such a summary judgment for the defendant; if, however, the said evidence (even though uncontradicted) is susceptible of conflicting inferences that might be lawfully drawn by the jury as the basis for holding the defendant so liable, or even if it is a close question of fact, the court should deny the defendant's motion for a summary judgment, so that the issues of fact may be submitted to a jury for determination in a trial. See, for instance, our decisions in Clark v. City of Atlantic Beach, Fla.App., 124 So.2d 305 (1960) and Baskin v. Griffith, Fla.App., 127 So.2d 467 (1961).
Applying the foregoing general rule to the case at bar, we are of the opinion that the evidence which was before the Circuit Court when it entered the summary final judgment appealed from herein, was such that a jury could not have lawfully found therefrom that Fields Motors was the owner of the said Volkswagen at the time it collided with the minor plaintiff on January 12, 1964. Since such ownership was one of the issues framed by the pleadings, and since the evidentiary establishment of such ownership was a sine qua non of the liability of Fields Motors in this cause of action, the said defendant was entitled to a summary judgment as a matter of law in accordance with Rule 1.36.
In an uninterrupted line of decisions the Supreme Court of Florida has held that the seller of an automobile who retains the naked legal title thereto as security for the payment of the purchase price and whose authority over the use of the vehicle reposes in the purchaser as the beneficial owner, is not subject to the tort liability imposed upon the owner of an automobile operated by another.
One of the leading Supreme Court decisions laying down the just-stated rule is Palmer v. R.S. Evans, Jacksonville, Inc., Fla., 81 So.2d 635 (1955). In that case an action for damages was brought against the buyer and seller of an automobile on account of the negligent operation of the said automobile. The buyer had executed a conditional sales agreement, providing for the seller's retention of legal title thereto. After the buyer had paid a part of the required down payment, the automobile was delivered to him, he drove the car out of the seller's used car lot, and approximately 20 minutes later struck a motorcycle on which the plaintiff was riding. In discussing the seller's liability in the light of its prior decisions concerning the liability of owners of automobiles for negligent operation, the Supreme Court said:
"In the case at bar, the parties intended to enter, did enter, and ultimately memorialized in writing, a conditional sales contract, in which title was retained by the seller until the completion of payment. Thus legal title to the automobile remained in the seller, R.S. Evans, at the time the accident occurred. But the rationale of our cases which impose tort liability upon the owner of an automobile operated by another, e.g., Lynch v. Walker, 159 Fla. 188, 31 So.2d 268, Boggs v. Butler, 129 Fla. 324, 176 So. 174, Holstun v. Embry, 124 Fla. 554, 169 So. 400, and Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255, would not be served by extending the doctrine to one who holds mere naked legal title as security for payment of the purchase price. In such a titleholder, the authority over the use of the vehicle which reposes in the beneficial owner is absent. Probably because of *390 this fact, the term `owner' is defined in F.S. § 317.74(20), F.S.A., to mean only the conditional vendee, in the case of a vehicle which is the subject of an ordinary agreement for conditional sale. Moreover, in jurisdictions having statutes making the owner liable for the negligence of another driving his car with his consent, the term `owner' has been universally construed to eliminate those who hold nothing more than naked legal title. See Craddock v. Bickelhaupt, 227 Iowa 202, 288 N.W. 109, 135 A.L.R. 474, and the cases cited in annotation, 135 A.L.R. 481, 485-486."
With reference to the facts before it in the said Palmer case, the Supreme Court declared that, before the buyer drove the car out of the seller's lot, the definite intention existed on the part of both to make immediate transfer of the beneficial ownership of the vehicle to the buyer, and that: "This intention of the parties, coupled with actual delivery of the goods and the tender and acceptance of the down payment, leaves us with no doubt that the sale had been completed, for the purpose of this case, before the accident occurred." The Supreme Court then affirmed the lower court's judgment, based upon a jury verdict for the seller and against the buyer.
In the later case of McAfee v. Killingsworth, 98 So.2d 738 (1957) the Supreme Court of Florida recognized and applied the rule laid down in the said Palmer decision to an analogous situation. To the same effect, see our decision in Cox Motor Co. v. Faber, Fla.App., 113 So.2d 771 (1959), where we held that a directed verdict for the holder of the naked legal title should have been granted at the trial.
In our opinion, the above holding of the Florida Supreme Court in the Palmer case is controlling in the present appeal. At most, Fields Motors held a naked legal title to the automobile involved in the instant action. We think that its intention and that of Davidson was that the latter should have the beneficial ownership of the vehicle. Paraphrasing the last-quoted langauge from the Palmer case, we think that such intentions, coupled with actual delivery of the automobile and the tender and acceptance of the down payment, leave us with no doubt that the sale had been completed, for the purpose of this case, before the accident occurred. Fields Motors, therefore, was entitled to the summary judgment in its favor as a matter of law.
In accordance with the numerous decisions construing the said Rule 1.36, as discussed above, we hold that the Circuit Court correctly entered the summary final judgment appealed from herein, and so that judgment must be and is
Affirmed.
WIGGINTON, Acting C.J., and STURGIS, J., concur.