498 So.2d 488 (1986)
Peter RINDFLEISCH and Ann Rindfleisch, Appellants,
v.
CARNIVAL CRUISE LINES, INC., a Florida Corporation, Appellee.
No. 85-2245.
District Court of Appeal of Florida, Third District.
November 4, 1986.
Rehearing Denied December 19, 1986.
*489 Kaplan, Sicking & Bloom and Kathleen M. Phillips, Joel V. Lumer, Miami, for appellants.
Fowler, White, Burnett, Hurley, Banick & Strickroot and Allan R. Kelley, Miami, for appellee.
Before BARKDULL, HENDRY and JORGENSON, JJ.
HENDRY, Judge.
This is an appeal by the plaintiffs, Peter and Ann Rindfleisch, from an order granting defendant Carnival Cruise Line's (Carnival) motion for a new trial and a cross-appeal by the defendant from certain evidentiary rulings rendered during the trial. For reasons more fully developed below, we affirm.
Briefly stated, the facts are as follows. The Rindfleisches filed a complaint in the Dade County Circuit Court seeking damages from the defendant, owner/operator of the cruise ship TSS "Festivale," for injuries sustained while passengers aboard the vessel. Plaintiffs did not claim damages for lost business opportunities, income, profits or wages. Ann Rindfleisch sought recovery for the loss of her husband's services, earnings and companionship. Plaintiffs alleged that during the early afternoon of June 1, 1982, while the ship was docked in San Juan Harbor, Peter Rindfleisch slipped and fell on a stairway aboard the ship, sustaining serious injury. Plaintiffs further alleged that the accident occurred as a result of defendant's negligent maintenance of the stairway. Carnival denied these allegations and argued that Mr. Rindfleisch's injuries were due to his own negligence.
Prior to the commencement of the jury trial in July, 1985, defendant made an ore tenus motion in limine to prevent any testimony by the plaintiffs regarding lost profits or lost business opportunities. Although the court precluded testimony as to a dollar amount of lost business opportunities, it permitted, over defendant's objection, testimony regarding lost business opportunities to demonstrate plaintiffs' mental anguish. In addition, defendant objected during trial to testimony by plaintiffs' expert concerning a coefficient of friction test performed on a step resembling the one on which he fell. The ground for the objection was that the plaintiffs had not and could not demonstrate a similarity of the circumstances and conditions attending the accident and the experiment. Finally, at the jury instruction conference the plaintiffs sought an instruction regarding negligence of a common carrier. The defendant objected to this charge, seeking an instruction using the reasonable care standard of negligence.[1] The court ruled that it would give the common carrier instruction as contained in Florida Standard Jury Instruction (Civil) 4.5. That instruction reads:

*490 Negligence is the failure to use reasonable care. The reasonable care required of a common carrier for the safety of a passenger is the highest degree of care that is consistent with the mode of transportation used and the practical operation of the business of a common carrier of passengers. In such a case negligence of a common carrier may consist either in doing something that would not be done or in failing to do something that would be done by very careful persons under the conditions and circumstances then affecting the carrier and the passenger.
The jury returned a verdict and judgment for the plaintiffs. The trial court set aside the verdict and ordered a new trial because it erred in giving standard instruction 4.5. The court ruled that the defendant owed its passengers the duty of reasonable care under the circumstances. The plaintiffs appeal that order. The defendant cross-appeals the court's evidentiary rulings concerning plaintiff's lost business opportunities and the testimony of plaintiff's expert regarding a coefficient of friction test.
Plaintiffs/appellants argue that section 327.32, Florida Statutes (1981), places a higher degree of care upon a boat owner/operator in order to prevent injuries to others. We agree. However, while the plaintiffs are free to sue in state courts for damages arising from maritime torts occurring on navigable waters in this country, maritime law is the substantive law to be applied irrespective of where the action is brought. Branch v. Schumann, 445 F.2d 175 (5th Cir.1971); Hallman v. Carnival Cruise Lines, Inc., 459 So.2d 378 (Fla. 3d DCA 1984); Still v. Dixon, 337 So.2d 1033 (Fla. 2d DCA 1976); Rountree v. A.P. Moller Steamship Co., 218 So.2d 771 (Fla. 1st DCA 1969); Foresman v. Eastern Steamship Corp., 177 So.2d 887 (Fla. 3d DCA 1965). In the instant case since the wrong complained of was a maritime tort, occurring in navigable waters, the proper law to be applied is federal admiralty law. See Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332 (11th Cir.1984); Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., 410 F.2d 178 (5th Cir.1969).
As maritime law has developed in this country, a number of courts have stated that an ocean carrier must exercise a very high degree of care for the safety of its passengers. American President Lines, Ltd. v. Lundstrom, 323 F.2d 817 (9th Cir.1963); McCormick Shipping Corp. v. Stratt, 322 F.2d 648 (5th Cir.1963); Summers v. Motor Ship Big Ron Tom, 262 F. Supp. 400 (D.S.C. 1967). The courts have used various terms in describing this standard. Allen v. Matson Navigation Co., 255 F.2d 273, 277 (9th Cir.1958) ("extraordinary vigilance and the highest skill"); Moore v. American Scantic Line, 121 F.2d 767, 768 (2d Cir.1941) ("as much skill, care, and prudence as an exceedingly competent and cautious man would bring to the task in like circumstances"); Complaint of Compagnie Generale Transatlantique, 392 F. Supp. 973, 976 (D.P.R. 1975) ("exercise the highest degree of care and diligence in providing for the safety of its passengers"). Notwithstanding the above-cited authorities, the Second Circuit in Rainey v. Paquet Cruises, Inc., 709 F.2d 169, 170-71 (2d Cir.1983) (citing W. Prosser, The Law of Torts § 34, at 181 (4th ed. 1971); 2 F. Harper & F. James, The Law of Torts § 16.13, at 946 n. 13 (1956)), stated that:
commentators long have contended ... that "technically the `high degree' instruction is incorrect as a matter of principle... ." "What is required, is merely the conduct of the reasonable man of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility, is merely one of circumstances, demanding only an increased amount of care."
Thus, in some instances reasonable care under the circumstances may be a very high degree of care; in other instances it may be something less. Id. at 171.
Turning to the instant case, and the standard of care to be applied, we are directed by the United States Supreme Court's decision in Kermarec v. Compagnie Generale *491 Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), which is dispositive. In Kermarec the Supreme Court decided that the licensee-invitee distinction for visitors found in common law does not apply in maritime cases. 358 U.S. at 630-31, 79 S.Ct. at 409-10, 3 L.Ed.2d at 554-55. The Court held that under maritime law "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." 358 U.S. at 632, 79 S.Ct. at 410, 3 L.Ed.2d at 555. See also Scindia Steamship Navigation Co. v. De Los Santos, 451 U.S. 156, 163 n. 10, 101 S.Ct. 1614, 1620 n. 10, 68 L.Ed.2d 1, 10 n. 10 (1981); Federal Marine Terminals v. Burnside Shipping Co., 394 U.S. 404, 415, 89 S.Ct. 1144, 1150, 22 L.Ed.2d 371, 380 (1969).
The authorities relied on by the appellants apparently limit Kermarec to cases that do not involve passengers. See M. Norris, The Law of Maritime Personal Injuries §§ 30, 33, 52 (3d ed. 1975); MARITIME LAW AND PRACTICE § 2.58, at 58 (CLE 1980); see also 70 Am.Jur.2d Shipping § 431 (1973); 7 Fla.Jur.2d Boats, Ships and Shipping § 50 (1978). Nevertheless, contemporary courts have been inclined to follow the rule enunciated in Kermarec, which blurs the distinction between passengers and others. They have found that the proper standard of care is what is reasonable under the circumstances. Smith v. Southern Gulf Marine Co. No. 2, 791 F.2d 416 (5th Cir.1986) (under maritime law, the owner of a ship owes to all who are on board the duty of exercising reasonable care under the circumstances of each case); Tittle v. Aldacosta, 544 F.2d 752 (5th Cir.1977) (duty owed by owner of charter fishing boat to passenger was one of ordinary care, to establish and maintain a reasonably safe means of ingress and egress onto and from the vessel); Gibboney v. Wright, 517 F.2d 1054 (5th Cir.1975) (owner of racing sloop owed duty to passengers not to provide a seaworthy vessel but rather to exercise reasonable care); Rainey v. Paquet Cruises, Inc., 709 F.2d at 172 (owner of ship in navigable waters owes to passengers duty of exercising reasonable care under the circumstances; extent to which circumstances surrounding maritime travel are different from those encountered in daily life and involve more dangers to passengers will determine how higha degree is reasonable in each case); Luby v. Carnival Cruise Lines, Inc., 633 F. Supp. 40 (S.D.Fla. 1986) (common carriers owe to their passengers the duty to exercise reasonable care under the circumstances; duty to warn passengers of dangers extends only to those dangers which are not apparent and obvious to the passenger); Rutledge v. A & P Boat Rentals, 633 F. Supp. 654 (W.D.La. 1986) (the reasonable care under the circumstances is the proper standard to be applied); Bradley v. Guy, 438 So.2d 854 (Fla. 5th DCA 1983) (under maritime law the owner of a ship in navigable waters owes to his guests only the duty to use reasonable care under the circumstances).
The appellants in the instant case do not question that maritime law controls this action. Instead, they argue that where there is a split of authority, as there is here, there are good policy reasons for the court to hold that standard jury instruction 4.5 is controlling. However, we are not persuaded by the appellants' logic. This court will follow the Supreme Court's mandate in Kermarec and hold that the defendant's conduct is measured by what is reasonable under the circumstances. Thus, we conclude that the trial court was correct in setting aside the verdict and ordering a new trial.
Carnival argues on cross-appeal that the trial court erred in allowing the introduction of evidence concerning plaintiff's loss of substantial business opportunities. Prior to trial, the court declined to accept defendant's proffered ore tenus motion to preclude this type of testimony. At trial, testimony was allowed regarding plaintiff's loss of opportunities due to his injury. Carnival asserts that this testimony was improper and served to confuse *492 and/or prejudice the jury. There is no indication in the record, however, that the defendant did in fact object to this testimony at the time it was offered at trial. The general rule is that a motion in limine is not sufficient to preserve the error for appellate review in the absence of further contemporaneous objection when the evidence is offered. Fincke v. Peeples, 476 So.2d 1319 (Fla. 4th DCA 1985); Swan v. Florida Farm Bureau Insurance Co., 404 So.2d 802 (Fla. 5th DCA 1981); see Marks v. Delcastillo, 386 So.2d 1259 (Fla. 3d DCA 1980) (the rule requiring a contemporaneous objection to the introduction of evidence at trial in order to preserve the issue is equally applicable to civil cases). The specific question must be objected to when asked at trial or the error is waived. Parry v. Nationwide Mutual Fire Insurance Co., 407 So.2d 936 (Fla. 5th DCA 1981).
The court in Swan, 404 So.2d at 804 (quoting Hartford Accident & Indemnity Co. v. McCardell, 369 S.W.2d 331, 335 (Tex. 1963)), succinctly stated the rule:
If a motion in limine is overruled, a judgment will not be reversed unless the questions or evidence were in fact asked or offered. If they were in fact asked or offered, an objection made at that time is necessary to preserve the right to complain on appeal that such questions asked or such evidence tendered were so prejudicial that a mere asking or tendering should require a reversal.
Thus any error in the trial court's ruling on the motion in limine was not preserved when Carnival offered no objection to the evidence when it was presented at trial. See O'Brien v. Ortiz, 467 So.2d 1056 (Fla. 3d DCA 1985).
As its second point on cross-appeal, Carnival argues that the trial court erred in allowing the opinion testimony of plaintiffs' expert on the coefficient of friction test. The general rule is "evidence of an experiment whereby to test the truth of testimony that a certain thing occurred is not admissible, where the conditions attending the alleged occurrence and the experiment are not shown to be similar." Hisler v. State, 52 Fla. 30, 38, 42 So. 692, 695 (1906); accord Alston v. Shiver, 105 So.2d 785 (Fla. 1958); Spires v. State, 50 Fla. 121, 39 So. 181 (1905). The party offering the evidence of the experiment has the burden to lay a proper foundation for its admission by showing a similarity of the circumstances and conditions. State v. Arroyo, 422 So.2d 50 (Fla. 3d DCA 1982). Furthermore, experimental evidence should be received with caution and only when it is clear that the experiment or experiments are broad enough to have distinct probative value. Burgin v. Merritt, 311 So.2d 688 (Fla. 3d DCA 1975).
In the instant case, plaintiffs' expert admitted that he did not know whether the step he tested was the step on which plaintiff slipped; he did not know whether the condition of the step he tested was similar to the condition of the step on which plaintiff slipped; he did not know where the step he tested was in service aboard the ship, if at all; and he did not know what had transpired with regard to the step in the three and one-half years which had passed between the accident and his test. Plaintiffs' expert further admitted that his test must be performed under similar or identical conditions to be accurate.
We note that the "rule of substantial similarity" between test conditions and actual conditions first enunciated in Hisler, has been eroded as to other types of experimental evidence. Johnson v. State, 442 So.2d 193 (Fla. 1983) (issue is one of the weight to be given the evidence rather than its relevance or materiality); see also Janke v. Corinthian Gardens, Inc., 405 So.2d 740 (Fla. 4th DCA 1981) (trial court did not abuse its discretion in concluding that test samples of deck covering which had been removed and tested after accident were representative and admissible), review denied, 413 So.2d 876 (Fla. 1982); Vitt v. Ryder Truck Rentals, 340 So.2d 962 (Fla. 3d DCA 1976) (dissimilarity between test conditions and conditions surrounding collision was not so much as to destroy validity of conclusions which could be drawn by jury from evidence of tests). In *493 McAllister v. Magnolia Petroleum Co., 319 S.W.2d 411 (Tex.Civ.App.), rev'd on other grounds, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958), the court held that very few tests can be made under the exact conditions present when a prior event occurred; the law requires only that substantially the same conditions must exist, and the trial court is allowed considerable latitude in determining whether the conditions are sufficiently similar to permit testimony about the tests.
If enough of the obviously important factors are duplicated in the experiment, and if the failure to control other possibly relevant variables is justified, the court may conclude that the experiment is sufficiently enlightening that it should come into evidence. See generally McCORMICK ON EVIDENCE § 202 (3d ed. 1984); Vitt v. Ryder Truck Rentals, 340 So.2d at 965. The trial court's determination typically is subject to review only for an abuse of discretion. Detroit Marine Engineering, Inc. v. Maloy, 419 So.2d 687 (Fla. 1st DCA 1982).
Like the courts in Johnson and Vitt, we are convinced that the issue is one of weight to be given the evidence, rather than its relevancy or materiality.[2] Applying this standard to the instant case, we conclude that the court did not abuse its discretion in admitting the testimony of the plaintiffs' expert.
For the foregoing reasons and based upon the authorities cited, the order and rulings appealed are affirmed.
Affirmed.
NOTES
[1] is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances or in failing to do something that a reasonably careful person would do under like circumstances.
Florida Standard Jury Instruction (Civil) 4.1.
[2] The trial judge stated, "You can cross-examine him on that and we'll leave it to the jury to give it the weight this is entitled."